UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STATE OF LOUISIANA

VERSUS

ABBOTT LABORATORIES, INC.,
ET AL

CIVIL ACTION

NUMBER 13-681-BAJ-SCR

**<u>NOTICE</u>**

　　Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

　　In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

　　ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

　　Baton Rouge, Louisiana, September 10, 2014.

　　　　　　　　　　　　　　　　　　／s／ Stephen C. Riedlinger
　　　　　　　　　　　　　　　　　　STEPHEN C. RIEDLINGER
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


STATE OF LOUISIANA

VERSUS

ABBOTT LABORATORIES, INC.,
ET AL

CIVIL ACTION

NUMBER 13-681-BAJ-SCR


**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the Plaintiff's Motion to Remand filed by plaintiff the State of Louisiana. Record document number 60. The motion is opposed.[1]

Review of the allegations contained in the plaintiff's Petition for Damages and Jury Demand (hereafter, "Petition"), the parties' arguments, and the applicable law, supports the conclusion that the defendants failed to satisfy their burden of establishing federal question jurisdiction. Plaintiff's Motion to Remand should be granted.


**Background and Arguments**

Plaintiff the State of Louisiana filed its Petition in state court on September 11, 2013, and named 54 pharmaceutical companies as defendants. Plaintiff alleged that the defendants were engaged in the business of manufacturing, distributing, marketing, and/or

---

[1] Record document number 76. Plaintiff filed a reply memorandum. Record document number 101. Defendants filed a sur-reply memorandum. Record document number 113.

selling prescription drugs. Plaintiff claimed the defendants engaged in conduct that violated Louisiana law, particularly the Louisiana Unfair Trade Practices and Consumer Protection Law, ("LUTPCPL"), LSA-R.S. § 51.1401, et seq., the Medical Assistance Programs Integrity Law ("MAPIL"), LSA-R.S. 46.437.1, et seq.,, Louisiana Civil Code Article 2315 (negligent misrepresentation); Louisiana Civil Code Article 1953 (fraud), Louisiana Civil Code Article 2520 (redhibition), and Louisiana Civil Code Article 2298 (unjust enrichment).[2] The alleged unlawful conduct underlying the plaintiff's state law claims is summarized as follows:[3]

- defendants engaged in an unlawful scheme to cause the State to pay for drugs that had not received approval by the Federal Drug Administration ("FDA"); defendants marketed these unapproved drugs to healthcare providers as being FDA approved and reimbursable by Louisiana Medicaid

- defendants' unlawful scheme involved the publication of phony National Drug Codes ("NDC"), which are the codes relied on by the State in approving reimbursement for providers of prescription drugs

- defendants' marketing and dissemination of false information throughout the healthcare industry caused claims for uncovered, ineligible products to be submitted to the Louisiana Medicaid Agency, which relied on the false NDC's and reimbursed providers for drugs not covered by the Medicaid program

---

[2] Petition, p. 16, section V, Causes of Action.

[3] *See generally*, Petition, ¶¶ 64-73. The Petition also alleged information regarding other lawsuits, settlements, government investigations and criminal proceedings brought against some of the defendants based on the same unlawful conduct alleged as the basis for the state law claims. *Id.,* ¶¶ 74-83.

2

- defendants knowingly, wantonly and intentionally provided or caused to be provided to the Center for Medicare and Medicaid Services ("CMS") false NDC's and false FDA approval information for their drugs, which CMS and the reporting services published to various reimbursers, including the State's Medicaid agency

- defendants knew that the State's Medicaid agency relied on the representations they provided to CMS and the healthcare industry, but nevertheless knowingly and intentionally submitted false FDA approval information and false NDC's for their drugs, which caused the State's Medicaid agency to pay millions of dollars for unapproved drugs that should not have been reimbursed

Plaintiff sought to recover all amounts the Louisiana Medicaid Agency paid for unapproved prescription drugs, profits the defendants obtained as a result of their unlawful actions, as well as statutory fines, penalties, attorneys' fees and costs, and also sought equitable relief.

Fifteen of the named defendants filed a Notice of Removal.[4] Defendants acknowledged that the Petition only alleged state law claims, but asserted that removal was proper based on original federal question jurisdiction under 28 U.S.C. § 1331. Citing the Supreme Court decisions in *Franchise Tax Board* and *Grable & Sons Metal Products, Inc.*, the defendants asserted that the state law claims necessarily raise disputed and substantial issues of federal law that are sufficient to establish federal question jurisdiction. This is so, they asserted, because the plaintiff's claims are

---

[4] The removing defendants alleged that all defendants properly served in the case are either a party to the removal or consented to the removal. The removing defendants attached a list of 29 consenting defendants. Record document number 1-3, Exhibit B.

3

premised on interpretation of the Food, Drug and Cosmetic Act ("FDCA"), the federal Medicaid Act, and regulations promulgated and enforced by the FDA. According to the defendants, resolving the following federal issues is necessary to decide whether they violated state law: (1) whether the defendants' drug products were or were not FDA approved; and (2) whether the drug products were or were not eligible for reimbursement under Medicaid. Defendants argued that to decide these questions the court must apply federal law - the laws which provide regulations and procedures applicable to the FDA and Medicaid reimbursement. Thus, whether the plaintiff can show the defendants violated state law depends on interpretation and application of federal laws and regulations.

Defendants also stated in their Notice of Removal that: (1) the issues of FDA approval and eligibility for Medicaid reimbursement are disputed in this case because the defendants challenge the plaintiff's interpretations of the FDCA, the Medicaid Act and their associated regulations; (2) these federal issues are substantial because the federal interest in the interpretation/application of these laws are important issues that belong in federal court and far outweigh any state interest; and, (3) allowing this case to proceed in a federal forum will not upset the balance between federal and state courts, because the federal court will be able to apply settled state law, whereas, the state court will be required to interpret and apply a complex federal

regulatory scheme.[5]

Plaintiff moved to remand the case essentially disputing all of the allegations and assertions contained in the defendants' Notice of Removal.  Plaintiff maintained that the federal issues cited by the defendants will either be underlying facts supporting their state law claims, or raised by the defendants in their defense to those claims.  Therefore, plaintiff argued, the federal issues identified by the defendants are not actually disputed or substantial, at most demonstrate a need to apply federal law, and are not in any way similar to the circumstances that supported finding federal question jurisdiction in the *Grable* case. Plaintiff also cited and relied on a line of similar cases decided in the last eight years where the district courts have found federal question jurisdiction lacking.[6]

### Applicable Law

The party invoking removal jurisdiction bears the burden of establishing federal jurisdiction over the state court suit. *Frank v. Bear Stearns & Company,* 128 F.3d 919, 921-22 (5th Cir. 1997). To support removal the defendant must locate the basis of federal

---

[5] In their Notice of Removal the defendants cited and relied on several district court decisions which they contend support removal of this case based on federal question jurisdiction. Record document number 1, Notice of Removal, ¶¶ 17-18.

[6] Record document number 60-1, Memorandum in Support of Motion to Remand, pp. 8-11.

jurisdiction in the allegations necessary to support the plaintiff's claims, ignoring the defendant's own pleadings and notice of removal. *Gully v. First National Bank,* 299 U.S. 109, 111, 57 S.Ct. 96, 97 (1936).

It is well established that the "arising under" language of 28 U.S.C. § 1331 has a narrower meaning than the corresponding language in Article III of the Constitution which defines the limits of the judicial power of the United States. Ordinarily, determining whether a case arises under federal law is governed by the well-pleaded complaint rule - a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint. Generally, there is no federal jurisdiction if the plaintiff properly pleads only state law causes of action, and the fact that federal law may provide a defense to a state law claim is insufficient to establish federal question jurisdiction. *Gutierrez v. Flores,* 543 F.3d 248, 251 (5th Cir. 2008); *Venable v. Louisiana Workers' Compensation Corp.,* 740 F.3d 937, 942 (5th Cir. 2013).

Federal question jurisdiction is generally invoked by the plaintiff pleading a cause of action created by federal law. Another well-established but less frequently encountered form of federal arising under jurisdiction, is that in certain cases federal question jurisdiction will lie over state law claims that implicate significant federal issues. *Grable & Sons Metal Prods.,*

6

*Inc. v. Darue Eng"g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363 (2005). Thus, a federal question exists only in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S.Ct. 2841 (1983); *Singh v. Duane Morris LLP,* 538 F.3d 334, 337-38 (5th Cir. 2008). As the Fifth Circuit recently observed in *Singh,* however, the Supreme Court in *Grable* warned that *Franchise Tax Board's* "necessary-resolution" language is no automatic test, and should be read as part of a carefully nuanced standard rather than a broad, simplistic rule.

> The fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction: Franchise Tax Board ... did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. Likewise, the presence of a disputed federal issue is never necessarily dispositive. Instead, far from creating some kind of automatic test, *Franchise Tax Board* thus candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction.  (internal quotations and citations omitted).

*Singh*, 538 F.3d at 338.

The Supreme Court's most recent summation of the standard for determining whether an embedded federal issue in a state law claim raises a substantial question of federal law is set forth in *Grable*. The Court stated: "The question is, does a state-law claim

7

necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*, citing *Grable*, 545 U.S. at 314, 125 S.Ct. 2363. The lack of a private cause of action under federal law is relevant to, but not dispositive of, the question of whether the right is substantial enough to satisfy the exercise of federal jurisdiction. The federal issue must be a substantial one that indicates a serious federal interest in claiming the advantages inherent in a federal forum. However, the presence of a disputed federal issue and the importance of a federal forum are never dispositive. The court must always assess whether the exercise of federal jurisdiction would be consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. *Grable*, 545 U.S. at 313, 125 S.Ct. at 2367, 2370.

One year after the *Grable* decision, the Supreme Court again addressed "arising under" jurisdiction in *Empire Healthchoice Assurance, Inc. v. McVeigh,*[7] which involved a health insurer for federal employees. The health insurance carrier sued its former enrollee's estate in federal court under state contract law for reimbursement of the insurance benefits it had paid for the enrollee's medical care. The insurer and the government argued

---

[7] 547 U.S. 677, 126 S.Ct. 2121 (2006).

8

that the complaint raised a federal claim because it sought to vindicate a contractual right contemplated by a federal statute, the Federal Employees Health Benefits Act, and under *Grable* federal law was a necessary element of the insurer's state law claim.

The Court rejected both arguments and found that federal question jurisdiction was lacking, emphasizing that *Grable* exemplifies a "slim category" of cases. In its analysis, the Court made several observations about the circumstances in *Grable* which resulted in the finding that the federal issue implicated by the state law claim was sufficient to find jurisdiction based on federal question:

> The dispute there [*Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as substantial, and its resolution was both dispositive of the case and would be controlling in numerous other cases. Here, the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court, and the bottom-line practical issue is the share of that settlement properly payable to Empire.
>
> *Grable* presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax sale cases. In contrast, Empire's reimbursement claim, McVeigh's counsel represented without contradiction, is fact-bound and situation-specific. (internal quotations and citations omitted).

*McVeigh*, 547 U.S. at 700-701, 126 S.Ct. at 2137.

Finally, in *Gunn v. Minton* the Supreme Court reaffirmed the standards and principles in *Grable* that the courts must use to identify the "special and small category" of cases in which arising

9

under jurisdiction lies when a claim has its origins in state rather than federal law. *Gunn v. Minton*, ___ S.Ct. ___, 133 S.Ct. 1059, 1064-65 (2013).

## Analysis

The authorities cited by the defendants to support their argument that embedded federal issues create federal jurisdiction in this case are insufficient to carry their burden. Defendants simply asserted, with little or no analysis, that each state law claim alleged in the Petition necessitates resolving issues which require application of 16 federal statutes and regulations listed in 42 U.S.C. § 1396r-8(k)(2)-(4) and the national rebate agreements ("NRA's"). Defendants conclusory assertions and speculation are insufficient to meet their burden of demonstrating their claims necessarily raise substantial and actually disputed issues of federal law.

The substantiality requirement looks "to the importance of the issue to the federal system as a whole." *Gunn*, 133 S.Ct. at 1066. With regard to whether the embedded federal issues are sufficiently substantial, the defendants must show that the issues involved implicate a serious federal interest in claiming the advantages inherent in a federal forum.[8] While the defendants make this

---

[8] "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest
(continued...)

assertion, they offer no legal or factual basis to support it. Thus far, no Supreme Court, Fifth Circuit or similar case in this court,[9] has held that the federal FDA or CMS statutes, regulations and procedures pertaining to Medicaid reimbursement for covered outpatient drugs are sufficiently substantial - serious enough to call for the advantages inherent in a federal forum - to support the exercise of federal question jurisdiction. Furthermore, the scope of federal question jurisdiction based on embedded federal issues is very narrow. *Grable, supra; Empire Healthchoice,* 126 S.Ct. at 701. In the spectrum of § 1331 "arising under" cases, the circumstances of this case are closer to the circumstances presented in *Merrell Dow* than in *Grable*.

Just as in *Grable* and *Merrell Dow*, the federal laws relied on by the defendants do not provide federal causes of action. Nor do any of the federal laws involved preempt state law remedies. These two factors are important indications that Congress did not intend a federal forum for state causes of action that implicate the

---

[8](...continued)
in claiming the advantages thought to be inherent in a federal forum." *Grable,* 125 S.Ct. at 2367.

[9] See, *James D. "Buddy" Caldwell, Attorney General, ex rel State of Louisiana v. Abbott Laboratories, et al,* CV 11-542-BAJ-SCR, Magistrate Judge's Report, record document number 14, adopted by March 28, 2012, Ruling and Order, record document number 17; *State of Louisiana v. Pfizer, Inc.* CV 13-727-BAJ-RLB, Magistrate Judge's Report and Recommendation, record document number 18, adopted by July 17, 2014, Ruling and Order, record document number 20.

federal laws and regulations on which the defendants rely. *Merrell Dow*, 106 S.Ct. at 811-12; *Grable*, 125 S.Ct. at 2369-70. But at this point the cases diverge – and this case follows *Merrell Dow* rather than *Grable.*

In *Grable*, the following considerations were central to the finding that the court had federal question jurisdiction over the removed quiet title action: (1) because the plaintiff claimed it had superior title based on the IRS failure to give adequate notice as defined by the federal statute, the federal tax law notice issue was an essential element of the state quiet title claim; (2) the meaning of the federal tax statute was actually in dispute; (3) the dispute over the adequacy of the notice under the federal statute was the only contested legal or factual issue in the case, and issue would be dispositive in that case as well as controlling in numerous other cases; (4) the Court recognized that the federal government has a strong interest in the prompt and certain enforcement of its tax laws; and, (5) state title cases rarely raise a contested matter of federal law, so a finding of federal question jurisdiction would likely create only a "microscopic effect" on the federal and state courts division of labor. *Grable*, 125 S.Ct. at 2368.

None of these factors are present in this case. Rather, the plaintiff's claims and allegations are more like the situation in *Merrell Dow*. In *Merrell Dow* the defendant removed a state court

12

petition that alleged only state law claims of negligence, breach of warranty, strict liability, fraud and gross negligence against the manufacturer of the prescription drug Bendectin. Plaintiff alleged that because the label on the drug did not adequately warn that its use was potentially dangerous it was misbranded in violation of the FDCA, and this created a rebuttable presumption of negligence under state law. The Court held that the complaint, alleging a violation of the FDCA as an element of a state law cause of action, did not give rise to a federal claim under § 1331. As explained in *Grable*, in addition to the lack of a private remedy or federal preemption, the important factors at work in *Merrell Dow* were as follows: (1) if alleging the violation of federal standards for labeling prescription drugs could get a state claim into federal court, so could alleging the violation of any other federal standards without a federal cause of action; and, (2) this would result in a large number of cases raising other state law claims with embedded federal issues being filed in and removed to the federal courts.

In the absence of a private remedy or federal preemption the the embedded federal issues here are even less substantial than in *Merrell Dow,* where alleging a violation of the FDCA as an actual element of a state cause of action did not give rise to a substantial federal issue. Furthermore, this case is unlike the "nearly pure question of law" presented in *Grable*, where the

13

federal issue was dispositive of the case and would be controlling in other cases. It is apparent from the Petition and the defendants' arguments, that the federal issues implicated by the state law claims asserted - LUTPCPL, MAPIL, negligent misrepresentation fraud, redhibition, unjust enrichment - are "fact bound and situation-specific."[10] If the mere need to rely on a broad range of federal laws in presenting or defending these claims is substantial enough to warrant exercising federal jurisdiction overly purely state law claims, then the shift to the federal courts of these and similar cases would likely be significant, rather than "microscopic."

## Conclusion

Defendants have the burden of establishing the existence of jurisdiction under § 1331. The Petition alleges only state law claims. Defendants failed to establish that the embedded federal issues are both actually disputed and substantial, and that exercising federal jurisdiction will not disrupt the federal-state balance of judicial responsibilities. Consequently, the defendants failed to satisfy their burden of establishing federal question jurisdiction.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the

---

[10] *McVeigh*, 547 U.S. at 700-701, 126 S.Ct. at 2137.

Plaintiff's Motion to Remand be granted.

Baton Rouge, Louisiana, September 10, 2014.

```
                              STEPHEN C. RIEDLINGER
                              UNITED STATES MAGISTRATE JUDGE
```

15